NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT JOSEPH WESSON,           :
                                :   Civil Action No. 08-3204 (NLH)
            Plaintiff,          :
                                :
      v.                        :   OPINION
                                :
ATLANTIC COUNTY JUSTICE         :
FACILITY, et al.,               :
                                :
            Defendants.         :

APPEARANCES:

Plaintiff pro se
Robert Joseph Wesson
Atlantic County Justice Facility
50 E. Thompson Avenue
Pleasantville, NJ 08232

HILLMAN, District Judge

     Plaintiff Robert Joseph Wesson, a prisoner confined at Atlantic County Justice Facility in Pleasantville, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was sentenced to a 364-day sentence in Atlantic County Justice Facility ("ACJF"). He alleges that the Warden of Atlantic County Justice Facility, nevertheless, delivered him to the custody of the New Jersey Department of Corrections for transfer to a state prison.

In the caption of the Complaint, Plaintiff names as defendants Atlantic County Justice Facility and the Department of Corrections of New Jersey. In the body of the Complaint, Plaintiff also names the Warden of Atlantic County Justice Facility as a defendant. Plaintiff seeks compensatory and punitive damages in the amount of $2,000,000.

In a Letter [2] received after the Complaint, Plaintiff describes a series of events transpiring during his incarceration. Plaintiff states that in March 2008, while at ACJF, he was sent outside in temperatures of approximately 35 degrees Fahrenheit, while his hair was wet after a shower, for a period of about two hours during which correctional officers performed a shakedown of cells. A few days later he had a

temperature and was diagnosed with the flu, for which he received appropriate treatment.

Plaintiff alleges that while working in the kitchen at ACJF, he burned his eye with hot water. He alleges that he received an eye wash to treat the injury. He was told to use the eye wash until the bottle was empty.

Plaintiff also expounds upon the transfer to state custody. He alleges that he hurt his neck during the bus ride to state prison, when the bus driver stopped suddenly. He states that he was returned to ACJF approximately a month after the erroneous transfer to state prison. He alleges that personnel at ACJF laughed about the erroneous transfer.

Plaintiff alleges that when he was returned to ACJF, his eye wash could not be found. A nurse told him there was no such eye wash, so she did not give him a replacement. When he returned to ACJF, he also complained of pain from his neck injury. He received pain medication at first, but then was told that he had to buy aspirin from the commissary. He received no further evaluation of his injury for several weeks, after which time he was taken for x-rays. At the time of writing the letter, he had not yet received the results of his x-rays.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are

frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a

4

>legal conclusion couched as a factual allegation").
>Factual allegations must be enough to raise a right to
>relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides:

>A party must state its claims ... in numbered
>paragraphs, each limited as far as practicable to a
>single set of circumstances. ... If doing so would
>promote clarity, each claim founded on a separate
>transaction or occurrence ... must be stated in a
>separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

5

> Persons ... may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

6

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat</u> <u>superior</u>. See <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

IV. <u>ANALYSIS</u>

A. <u>The Named Defendants</u>

Plaintiff has failed to state a claim against any of the named defendants.

A jail is not a "person" amenable to suit under 42 U.S.C. § 1983. See <u>Marsden v. Federal BOP</u>, 856 F. Supp. 832, 836

7

(S.D.N.Y. 1994); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-94 (E. D. Va. 1992). Accordingly, all claims against Atlantic County Justice Facility must be dismissed.

In addition, the Eleventh Amendment to the United States Constitution bars all claims against the New Jersey Department of Corrections. The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159,

169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For all of these reasons, all damages claims against the New Jersey Department of Corrections must be dismissed with prejudice.

Finally, Plaintiff fails to allege any personal involvement by the Warden of Atlantic County Justice Facility in any of the alleged wrongdoing except the transfer. As there is no vicarious liability under § 1983, see, e.g., Rode v. Dellarciprete, 845 F.2d at 1207, the claims against the Warden based upon respondeat superior liability must be dismissed.

B.  The Transfer to State Prison

Plaintiff fails to state a claim for deprivation of liberty without due process, under the Fourteenth Amendment, arising out of his one-month confinement in state prison instead of a county jail.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or enacted law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and

10

"qualitatively different" from punishment characteristically suffered by one convicted of a crime).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242. See also Wilson v. Johnson, 805 F.2d 394, 1986 WL 18052 (4th Cir. 1986) (unpubl.) (prisoner has no constitutional right to a change of his custodial location by reason of the Interstate Corrections Compact).

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

11

New Jersey law provides that, when a person is sentenced to imprisonment for a term of less than one year, the court shall commit him either to the common jail of the county, the county workhouse, or the county penitentiary for the term of the sentence. N.J.S.A. 2C:43-10(c). This provision, however, does not create a liberty interest in prisoners serving short sentences in county jails rather than state prison. To the contrary, this provision is directory in nature, setting forth the responsibilities of government officials. See State v. Rosenberg, 78 N.J. super. 400 (App. Div. 1963) (construing predecessor N.J.S. 2A:164-18). Cf. also, e.g., Green v. Rizzo, 2006 WL 1582070 (D.N.J. June 5, 2006) (New Jersey law does not create a liberty interest in confinement in county jail rather than state prison); Hunter v. Ortiz, 125 Fed.Appx. 241 (10th Cir. 2005) (no liberty interest in confinement in state prison rather than county jail); McGee v. Texas Dept. of Criminal Justice, 95 F.3d 55 (5th Cir. 1996) (no liberty interest in confinement in county jail rather than state prison). Moreover, none of the facts alleged in the Complaint suggest that the confinement Plaintiff experienced in state prison rose to the level of an "atypical and significant hardship." This claim must be dismissed with prejudice.

C.   Eight Amendment Claims

Plaintiff may be attempting to state an Eighth Amendment conditions-of-confinement claim based upon his being sent outside in cold weather while corrections officials conducted a shakedown at the jail. It also appears that Plaintiff may be attempting to allege a claim based upon inadequate medical care, specifically, the failure to replace his eye wash and the delay in obtaining x-rays to diagnose his neck pain.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by

13

a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

Wholly apart from the fact that none of the named defendants have personal involvement in these events, Plaintiff has failed to state an Eighth Amendment claim.

1. The Conditions-of-Confinement Claim

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent

14

that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff alleges that he was directed outside as part of a general movement of prisoners, in connection with a standard type of prison search, for only the period of time it took to complete the search. Nothing in the facts alleged suggests that prison officials acted with deliberate indifference. Moreover, the conditions were not so extreme as to amount to a deprivation of the minimal civilized measure of life's necessities. Plaintiff does not allege that he suffered symptoms of exposure at the time of the shake-down, but that several days later he felt "sick as a dog" and had a fever. This claim must be dismissed.

  2. The Medical-Care Claims

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation

15

of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in

16

itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate

17

indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." <u>Monmouth County Corr. Inst., Inmates v. Lanzaro</u>, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." <u>Id.</u> (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" <u>Id.</u> at 347 (citation omitted).

Here, Plaintiff complains that at least a month after an eye injury, for which he received prompt and appropriate treatment, a nurse refused to replace lost eye wash. Plaintiff does not allege that he had any residual injury at the time the nurse refused to replace his eye wash. Similarly, Plaintiff alleges that he had neck pain more than a month after the bus ride to state prison during which he hurt his neck. Personnel at ACJF gave him pain medication, permitted him to purchase over-the-counter pain medicine from the commissary, and scheduled him for x-rays, the results of which are pending. Nothing in this series of facts establishes a denial of medical care in violation of the Eighth Amendment. At most, Plaintiff has stated mere

18

disagreement with the manner in which his medical complaints were addressed. Accordingly, this claim will be dismissed.

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.[1] However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to correct the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open and file an amended complaint.[2] An appropriate order follows.

At Camden, New Jersey

*Noel L. Hillman*
Noel L. Hillman
United States District Judge

Dated: November 26, 2008

---

[1] If Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

[2] Any such proposed amended complaint should be complete in itself. See 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990).